UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNYA SORO,<br>Plaintiff,<br>v.<br>FCA US, LLC; CARL BURGERS DODGE CHRYSLER JEEP RAM WORLD; and DOES 1 through 10, inclusive,<br>Defendants. | Case No.: 25-cv-02200-GPC-SBC<br>**ORDER GRANTING DEFENDANT FCA US, LLC'S MOTION FOR SUMMARY JUDGMENT**<br>**[ECF No. 33]** |

This case involves alleged vehicle defects in a 2017 Ram 1500 truck. Currently before the court is Defendant FCA US, LLC's ("FCA") motion for summary judgment and request for judicial notice. The Court finds the matter suitable for decision on the papers under Civil Local Rule 7.1(d) and vacates the hearing set for October 9, 2026. For the reasons outlined below, the Court grants FCA's motion for summary judgment in its entirety.

**Background**

**I. Factual Background**

On February 18, 2017, Plaintiff leased a 2017 Ram 1500. Ex. 1 (Complaint, ECF No. 1-2) at ¶ 7. FCA's warranty records list a "EXTENDED FEDERAL EMISSSIONS" warranty of 96 months or 80,000 miles expiring February 18, 2025. ECF No. 33-17, Ex. 10 at 12, 32, 50, 82. Meanwhile, the FCA warranty booklet identified the powertrain control module as a part covered for 8 years or 80,000 miles. *Id*. During Plaintiff's lease term, vehicle repair records indicate the vehicle was serviced in October 2017, December 2017, October 2018, and March 2019. ECF No. 33-17, Ex. 10 at 1-23, 24-37, 38-67, 68-96; Tremonti Decl., ¶ 4, Ex. 11.

As to the October 2017 visit, Plaintiff reports that the rearview camera image "got smaller" (ECF No. 33-17, Ex. 10 at 7) and had "completely disappear[ed]." In addition, the check engine light was on. ECF No. 33-18, Ex. 11 at 31:18-32:16. In December 2017, Plaintiff brought the vehicle in for oil and filter service. Plaintiff stated in her deposition that on this occasion the check engine light was on again but the concern was not written up. ECF No. 33-18, Ex. 11 at 36:20-37:4; 37:20-38:3.

In October 2018, Plaintiff testified that while driving home from Los Angeles with her two sons, "the whole screen froze, and the check engine start flashing… The stereo went off… Cameras didn't start -- didn't work." ECF No. 33-18, Ex. 11 at 27:8-28:20. Asked directly whether the vehicle shut off, Plaintiff testified: "Yes. The whole thing shut

off, except the vehicle." *Id.* at 28:2-4. A second, similar event occurred en route to her son's school with her son in the car. *Id.* at 29:19-30:12.

From October 17-22, 2018, three recalls were performed: U05 (reprogramming the PCM, TCM, RF Hub, and IPC software, U61 ("Reprogram Powertrain Control Module"), and U74 (tailgate latch actuator stop block). ECF No. 33-17, Ex. 10 at 39-41, 58-60; *see also* ECF No. 33-16, Ex. 9 at 6-11. Plaintiff testified she also brought the truck in for a cooling concern and the rear camera, neither of which appears on the order. ECF No. 33-18, Ex. 11 at 40:9-14, 41:12-15, 45:1-15.

In March 2019, Plaintiff brought the vehicle back for a recall: Recall U53—"Reprogram Occupant Restraint Controller (ORC) Module—Includes ORC and ABS Initialization"—reflashing the restraint control module "from old part number 68303218AA to current part number 68346715AC." ECF No. 33-16, Ex. 9 at 13-14; ECF No. 33-17, Ex. 10 at 69. Plaintiff additionally reported that the radio froze, Bluetooth stopped working, and the radio had no volume; the dealer "reconfigure[d] infotainment(radio)." ECF No. 33-16, Ex. 9 at 14.

Plaintiff states that March 2019 was the last time she returned the vehicle for service before lease-end. ECF No. 33-18, Ex. 11 at 51:7-13. FCA's records show a lease-end date of February 18, 2020. ECF No. 33-16, Ex. 9 at 6. When Plaintiff returned the vehicle, she informed the dealership that "the car has been having issue[s] all these years. And I'm returning it with those issues." ECF No. 33-18, Ex. 11 at 12:12-16, 50:17-24.

Plaintiff stated she no longer has the vehicle and did not purchase it after lease-end. ECF No. 33-18, Ex. 11 at 9:22-25-10:1-4.

## II. Procedural Background

Plaintiff filed her complaint on January 30, 2025, in San Diego Superior Court. ECF No. 1-2, at 2. On August 25, 2025, FCA removed the case from the superior court to this Court based on diversity jurisdiction. ECF No. 1, at 2. That same day, FCA filed an answer to Plaintiff's complaint. ECF No. 2.

In her complaint, Plaintiff alleges four violations of the Song-Beverly Consumer Warranty Act ("Song-Beverly") against FCA, including: (1) failure to timely replace the vehicle or make restitution Plaintiff pursuant to California Civil Code § 1793.2(d) (Count 1); (2) failure to commence repairs of her vehicle within a reasonable time and repair the vehicle to conform with the applicable warranties within thirty days pursuant to California Civil Code § 1793.2(b) (Count 2); (3) failure to make available to its repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period pursuant to California Civil Code § 1793.2(a)(3) (Count 3); and (4) breach of the implied warranty of merchantability pursuant to California Civil Code §§ 1791.1, 1794, and 1795.5 (Count 4). ECF No. 1-2, ¶¶ 39-57. Plaintiff also alleged that FCA committed fraudulent inducement by concealment by failing to disclose the existence of the alleged engine defect (Count 6). *Id.* ¶¶ 63-71. Plaintiff seeks general

damages, restitution, punitive damages, and reasonable attorneys' fees. ECF No. 1-2, at 14.

On November 18, 2025, FCA filed a motion for judgment on the pleadings. On February 19, 2026, the Court denied the motion as to Plaintiff's Song-Beverly express warranty counts 1 through 3 and granted the motion as to count 4 (implied warranty of merchantability) and count 6 (fraudulent inducement concealment). ECF No. 23, at 23.[1]

On July 20, 2026, Defendant filed a motion for summary judgment on the grounds that (1) Plaintiff's remaining Song-Beverly claims are untimely, and (2) Plaintiff cannot establish the essential elements of the remaining claims. ECF No. 33-1. Defendant also filed a request for judicial notice. ECF No. 33-5. Plaintiff responded on August 21, 2026. ECF No. 36. Plaintiff also filed a list of Evidentiary Objections. ECF No. 36-2. Defendant filed their reply on September 11, 2026. ECF No. 37.

## III. Evidentiary Objections

Before granting summary judgment in a case, a district court must rule on evidentiary objections that are material to its ruling. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). Plaintiff has filed evidentiary objections to evidence in support of Defendant's motion for summary judgment. ECF No. 36-2. To the extent that

---

[1] Count 5 was a negligent repair claim filed against Carl Burgers, the seller of the Ram truck, and was dismissed by Plaintiff prior to the case being removed to federal court. ECF No. 1 at 3).

the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider it.

As to material objections, the Court overrules Plaintiff's Second Evidentiary Objection challenging the Tremonti Declaration ¶ 3 and ECF No. 33-17, Ex. 10 based on a lack of adequate authentication, lack of personal knowledge, and hearsay. Fed. R. Evid. 901; Fed. R. Evid 803(6); Fed. R. Evid 601. ECF No. 36-2. At summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents". *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).

The Court is satisfied that Defendant could present Ex. 10, Carl Burger Dealership Repair Records, in admissible form at trial. Defendant has stated they could present Ex. 10 through testimony from a qualified dealership witness or a certification complying with Rules 803(6), 902(11), and 601. ECF No. 38, at 5. Based on this, the Court finds that Ex. 10 could be introduced at trial consistent with the federal rules of evidence. *Arellano v. Calderon*, No. 22-CV-441 TWR (LR), 2024 WL 1163177, at *2 (S.D. Cal. Mar. 18, 2024). At this stage, that is all that is required. Therefore, the court denies Plaintiff's Second Evidentiary Objection.

## IV. Judicial Notice

Defendant seeks judicial notice of eight documents. ECF No. 33-5. Under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"). As Exhibits 1-3 are court filings and available as an undisputed matter of public record, the Court **GRANTS** Defendant's request with respect to Exhibits 1-3. Next, Exhibits 4-7 are documents evidencing the legislative analysis for Assembly Bill No. 1755, 2023-24 Regular Session and the signing message of the Governor. The Court denies the motion for judicial notice of Exhibits 4-7 as moot, as these documents concern only legislative facts for which "[j]udicial notice ... is unnecessary." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Since the associated exhibits contain only legislative facts, we are free to consult them to the extent we find them useful. *See Owino v. Holder*, 771 F.3d 527, 534 n.4 (9th Cir. 2014); Fed. R. Evid. 201 advisory committee notes.

Exhibit 8 is a copy of a webpage maintained by the State of California and is challenged by Plaintiff. ECF No. 36-2. The Court addresses this objection below at section I(A).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just,

speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

An affirmative defense is something "the defendant must plead and prove." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). If a defendant moves for summary judgment based on an affirmative defense, they must show that "no reasonable trier of fact could fail to find" that defendant proved their affirmative defense. *Nia v. Bank of Am.*, N.A., 725 F. Supp. 3d 1150, 1172 (S.D. Cal. 2024), *aff'd*, 172 F.4th 1065 (9th Cir. 2026). For limitations-period defenses, a defendant must show that no jury could reasonably conclude the claim was timely. *Stiles v. Walmart, Inc.*, 639 F. Supp. 3d 1029, 1062 (E.D. Cal. 2022). If Defendants establish that plaintiffs' claims are time barred absent application of an equitable exception, plaintiffs bear the burden of demonstrating the applicability of any such exception. *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1092 (C.D. Cal. 2016).

## DISCUSSION

### I. Plaintiff's Song-Beverly Claims Are Not Barred by § 871.21

#### A. Section 871.21 – Six-Year Bar

Defendant argues that Plaintiff's claims are time barred pursuant to California Code of Civil Procedure § 871.21(b). ECF No. 33-1, at 10-11. California Code of Civil Procedure § 871.21 went into effect on January 1, 2025 and Defendant claims to have opted into the statutory regime. *Id*. The statute reads: "[A]n action covered by Section 871.20 shall not be brought later than six years after the date of original delivery of the motor vehicle." California Code of Civil Procedure § 871.21(b). Defendant states that the vehicle was delivered to Plaintiff on February 19, 2017, and the action was not filed until January 30, 2025, nearly 8 years later. ECF No. 33-1, at 10-11.

Plaintiff responds that Defendant cannot invoke § 871.21's six-year time bar as it has failed to provide sufficient evidence on whether Defendant "opted into" the Section 871.20 *et seq*. statutory regime. ECF No. 36, at 13. California Code of Civil Procedure § 871.30 identifies the opt in process. The relevant provisions are listed below.

> (a) Within 30 days of the effective date of the act adding this section, a manufacturer may elect to be governed by this chapter for all actions described in subdivision (a) of Section 871.20 with respect to all of its motor vehicles sold in the year 2025 and in all prior years by providing written notice of that election to the Arbitration Certification Program within the Department of Consumer Affairs.
>
> (b) Within 60 days of the effective date of the act adding this section, the Arbitration Certification Program within the Department of Consumer Affairs shall publish to its website the list of all manufacturers that have elected under subdivision (a) to proceed under this chapter for actions related to motor vehicles sold in the year 2025 and in all prior years.

California Code of Civil Procedure § 871.30

Plaintiff alleges that pursuant to § 871.30(a), Defendant has failed to offer adequate proof that it provided written notice of Defendant's election to proceed under the statutory regime. ECF No. 36, at 13. As proof of the opt in, Defendant requests judicial notice of the webpage to the Arbitration Certification Program's (ACP) accepted manufacturer list. ECF No. 33-15, Ex. 8. Plaintiff objects to the admissibility of the website or the Court taking judicial notice of it. ECF No. 36, at 13.

Courts are permitted to take judicial notice of government-provided information on their official website. *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 946 n.17 (9th Cir. 2018) (judicial notice of a government website containing a list of registered trading systems); *Daniels–Hall v. National Education Association*, 629 F.3d 992, 999 (9th Cir. 2010) (judicial notice of school district web site where neither party disputes the authenticity of the web site or the accuracy of the information displayed). Accordingly, the Court takes judicial notice of Ex. 8, the Department of Consumer Affairs website.

Plaintiff also argues that the Court is not permitted to take judicial notice of the truth of a disputed fact. ECF No. 36, at 13-14. However, courts are permitted to take judicial notice of the truth of facts when they are not subject to reasonable dispute. *Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, 623 F. Supp. 3d 1059, 1064–66 (C.D. Cal. 2022) (citing Fed. R. Evid. 201(b)(2)). Plaintiff does not dispute the authenticity of the

website or challenge the accuracy of the information displayed.[2] Moreover, "[a] fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.*' Gray v. Luxottica of Am., Inc.*, No. 8:24-CV-00160-MRA-DFM, 2024 WL 5689566, at 12, n.2 (C.D. Cal 2024). Ex. 8 is comprised of a screenshot of ACP's official website. The exhibit also contains a hyperlink which directs the Court to the Department of Consumer Affairs official website. *Id*. at 2. At the top of the webpage, the following is stated "These manufacturers have elected to opt-in to the new Lemon Law procedures (Civil Code of Procedures sections 871.20 to 871.30)". *Id*.

The Court takes judicial notice that FCA US LLC is listed as a manufacturer who opted in pursuant to 871.30. The Court finds that the fact that Defendant opted in is not subject to reasonable dispute as the information in Ex. 8 can be accurately and readily determined from a source whose accuracy cannot be reasonably questioned. The court **GRANTS** judicial notice of Exhibit 8 and the fact that FCA US LLC opted into Section 871.30.

B. <u>§ 871.21 Does Not Apply Retroactively to Plaintiff's Song Beverly Claims</u>

---

[2] Plaintiff argues that production of the written notice is required to show that the opt in occurred. ECF No. 36, at 23. However, Plaintiff provides no authority for such proposition and therefore the court rejects this argument.

Plaintiff argues that the bar under § 871.21 is not applicable to this case because it would impose an impermissible retroactive application of the statute. ECF No. 36, at 14. Section 871.21 was signed into law on September 29, 2024. The statute went into effect on January 1, 2025. As the car was initially acquired on February 18, 2017, application of § 871.21 to this claim would be retrospective. ECF No. 1-2, at ¶ 7. The California Supreme Court has explained that in the absence of a clear legislative intent to the contrary, statutory enactments apply only prospectively. *Evangelatos v. Superior Ct.,* 44 Cal. 3d 1188, 1193–94 (1988) (recognizing the common-sense notion that it may be unfair to change "the rules of the game" in the middle of a contest); *McClung v. Employment Development Dept*. 34 Cal.4th 467, 475 (2004) (there is a presumption against retroactive application of statute unless legislature plainly directed otherwise by " 'express language of retroactivity or ... other sources [that] provide a clear and unavoidable implication that the Legislature intended retroactive application.' ".

In response, Defendant argues that the legislative record and language of the statute make it clear that § 871.21 applies retroactively. ECF No. 33-1, at 15-16. At no point does Defendant identify any legislative history or statutory provision that directly addresses retroactivity. Instead, Defendant cites to caselaw stating "[i]n the absence of such an express declaration of legislative intent for retroactive application, a court may look to a variety of other factors to determine such legislative intent, such as the context of the legislation, its objective, the evils sought to be remedied, the history of the times

and similar legislation, public policy, and/or contemporaneous statutory construction". *Santangelo v. Allstate Ins. Co.*, 65 Cal. App. 4th 804, 814 (1998). However, *Santangelo* is a California appellate decision that is difficult to reconcile with the presumption against retroactive application of statutes that the California Supreme Court has repeatedly recognized. *Santangelo* fails to acknowledge this presumption and its force and persuasiveness to this case is slight as a result.

However, even considering *Santangelo*, Defendant has failed to show sufficient legislative intent to warrant retroactive application. Defendant's citations to the context, public policy, or reports on the statute provide little, if any, support for retroactive application. A fair reading of the legislative intent makes it clear that retroactivity or prospectivity was simply not addressed. *Evangelatos*, 44 Cal. 3d, at 1209. Furthermore, other courts that have analyzed this issue have held that § 871.21 does not apply retroactively based on the strong presumption against retroactive application and absence of legislative intent. *Galdamez v. FCA US LLC*, 830 F. Supp. 3d 982, at 986-87 (C.D. Cal. 2026) (applying presumption against retroactive application of Section 871.21 where absence of legislative history indicating it was intended to apply retroactively); *Veronica G. Perez et al v. Gen. Motors LLC et al*, No. 2:25-CV-08189-WLH-BFM, 2026 WL 2466530, at 1–2 (C.D. Cal. 2026) (same).

Applying the presumption against retroactive application of § 871.21 and finding no express language to support it, Defendant's argument fails.

C. The Constitutionality of Applying § 871.21

In addition to an attack on the retroactive application of § 871.21, Plaintiff argues that retrospective application would be an unconstitutional violation of due process. As the Court has already ruled that § 871.21 does not apply based on the presumption against retroactivity, the court declines to rule on the issue of constitutionality.

## II. Plaintiff's Claims are Barred by Cal. Com. Code § 2725

A. Background

Defendant alleges that Plaintiff's claims are barred by California Commercial Code § 2725. Plaintiff's claims under the Song-Beverly Act allege violations of the Act's express warranty provisions. "The Song–Beverly Act does not include its own statute of limitations." *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1305–1306 (2009). "Accordingly, 'California courts have held that the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by . . . section 2725 of the Uniform Commercial Code.'" *Dale v. FCA US, LLC*, No. 2:25-CV-00868 WBS JDP, 2025 WL 2912627, at 2 (E.D. Cal. 2025), (quoting *Mexia*, 174 Cal. App. 4th at 1306). The relevant provisions are listed below:

> An action for breach of any contract for sale **must be commenced within four years after the cause of action has accrued**. California Commercial Code § 2725 § 2725(1). (emphasis added)
>
> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly **extends to future**

> **performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.** California Commercial Code § 2725(2). (emphasis added)

Defendant claims that Plaintiff's express warranty claims are untimely because they were made more than four years after delivery of the vehicle. ECF No. 33-1, at 10. Generally, a cause of action for breach of a contract for sale "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *Yi v. BMW of N. Am., LLC*, No. 2:17-CV-06467-SVW, 2018 WL 3359016, at 6 (C.D. Cal. 2018), *aff'd sub nom*. *Kwon Yi v. BMW of N. Am., LLC*, 805 F. App'x 459 (9th Cir. 2020). A breach of warranty occurs when tender of delivery is made[.]" California Commercial Code § 2725(2). However, an exception provides that, "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id*.

B. The Emissions Comp Warranty is an Express Warranty of Future Performance

Plaintiff asserts that the VIP Summary Report lists a "MAJOR EMISSIONS COMP WARRANTY" that provides express warranty coverage for eight years or 80,000 miles. ECF 36 at 11.[3] Defendant argues that this is a statutorily mandated emissions

[3] The VIP Summary Reports interchangeably reference an "EXTENDED FEDERAL EMISSIONS" warranty (Ex. 10 at 12, 32) and a "MAJOR EMISSIONS COMP WARRANTY" (Ex.10 at 50, 82).

warranty which is distinct from manufacturer-offered express warranties for purposes of Song-Beverly. ECF 37 at 5. However, Defendant does not cite any caselaw to support such proposition. Courts have considered emission control system warranties as the basis for a Song-Beverly claim, *see Spingola v. BMW of N. Am., LLC*, No. 18-cv-00528-JCS, 2019 WL 6050905, at 4-5 (N.D. Cal. 2019) (discussing California emissions warranty as basis for Song-Beverly claim); *Yi*, 2018 WL 3359016, at 4 (same); *see e.g. Dong v. BMW of N. Am.*, LLC, No. 19-CV-2202 DMS (BGS), 2021 WL 824771, at 5 (S.D. Cal. 2021). The plain language of the emissions warranty extends 8 years which is an "express time limit" and therefore qualifies as a warranty of future performance. *Rodarte v. Ford Motor Co.*, No. CV18-10499-DMG-JEMX, 2019 WL 1100150, at *5 (C.D. Cal. Mar. 7, 2019); *See Cardinal Health 301, Inc. v. Tyco Elecs. Corp.,* 169 Cal. App. 4th 116, 133 (2008).

C. Accrual of the Express Warranty of Future Performance

Defendant argues that Plaintiff confuses the duration of warranty coverage with the accrual of her claims. ECF No. 37, at 6. The Court agrees. "Where an express warranty guarantees performance for a defined term . . . 'the four-year clock begins to tick when the breach is discovered or should have been discovered, or when the explicit time period expires, whichever occurs first.'" *See Ngo v. BMW of N. Am. LLC*, No. CV 20-06197-MWF (GJSX), 2025 WL 819568, at 5 (C.D. Cal. Feb. 2025) (quoting 2 The Law of Product Warranties § 11:4 (2024)); *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d 210, 222 (N.D. Cal. 2019). In the context of the Song-Beverly Act, courts have found a plaintiff to

be on notice of his claim - beginning the running of the statute of limitations - before the expiration of the express warranty if a plaintiff discovered or should have discovered his claim before then. *Yi*, 2018 WL 3359016, at *6. Once Plaintiff has "a suspicion of wrongdoing, and therefore an incentive to sue," they have to "decide whether to file suit or sit on [his] rights". *Id*. (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111, 245 (1988)).

Courts have found the statute of limitations period to commence when a plaintiff reasonably knew that their vehicle would not perform as it should and defendant would not replace it. *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 925 (C.D. Cal. 2010). Here, Plaintiff states that she returned the vehicle at lease end in February 2020. ECF No. 36, at 12. In her deposition, when asked about returning the vehicle, plaintiff told the dealership "that the car has been having issue[s] all these years. And I'm returning it with those issues." Ex. 11 at 12:12-16, 50:17-24. These admissions represent knowledge of the alleged issues at the time the vehicle was returned and are fatal to plaintiff's claims. ECF No. 37, at 3. Plaintiff's own admission and actions reveal an awareness that the vehicle was not performing as it should and Defendant would not replace it. Specifically, the statements show Plaintiff returned the vehicle, was no longer in possession of the vehicle, had knowledge of the issues, and that the issues had not been resolved. As a result, Plaintiff had reason to believe the car would not be repaired for her

future use. These facts are sufficient to show that Plaintiff was on notice of her claim as late as February 2020.

Once Defendant meets their burden, the burden moves to Plaintiffs to produce enough evidence to rebut Defendant's claim and create a genuine issue of material fact. *See Celotex*, 477 U.S. at 322–23. Here, Plaintiff presented no evidence to refute Defendant's claim. Plaintiff does not state any facts or present any evidence relating to when the breach was discovered or could have been discovered. Instead, Plaintiff argues that Defendant failed to prove or provide evidence that the breach was discovered "or should have been discovered" more than four years before January 30, 2025. ECF No. 36, at 8. Under *Celotex*, this is plainly insufficient to create a genuine issue of material fact.

By comparison, courts have found that a Song-Beverly plaintiff was on notice of his claims for statute of limitations purposes after as few as two visits for the same problem. *Durkee v. Ford Motor Co.,* 2014 WL 7336672, at *6 (N.D. Cal. Dec. 2014) (first or second repair would also put a reasonable person on inquiry notice that there had been a Lemon Law breach). Here, Plaintiff states that her vehicle was serviced for camera and infotainment system problems in October 2017, October 2018, and March 2019 and were never repaired. ECF No. 36, at 19-20. Plaintiff also points to continued issues with the check engine light, PCM circuit, and four recall procedures. *Id*. at 11-13. All these visits occurred prior to the return date of February 2020. *Id*. This prior repair and recall

history provided Plaintiff with actual notice as early as 2018 but no later than February 2020.

D. The Court Did Not Set a Binding Outer Accrual Date

The Court next addresses Plaintiff's claim that the Court fixed an outer accrual date that makes the complaint timely. ECF No. 36, at 18. This is a mischaracterization of the court's ruling. At the pleading stage, the Court recognized the date Plaintiff took delivery of the vehicle was February 18, 2017. ECF No. 23 at 13. In its Order, the Court observed that "Plaintiff's cause of action under the Song-Beverly Act for violation of the express warranty accrued no later than February 18, 2022". *Id*. In deciding the motion for judgment on the pleadings, the Court identified caselaw stating "Where an express warranty guarantees performance for a defined term . . . 'the four-year clock begins to tick when the breach is discovered or should have been discovered, or when the explicit time period expires, whichever occurs first". *Id*. (citing *Ngo*, 2025 WL 819568, at 5). At the time of the prior ruling, the Court did not have before it evidence as to the accrual date. In applying the law, the Court acknowledged a possible outer accrual date of February 18, 2022. This did not foreclose an inquiry into an earlier accrual date based on when the breach is discovered or should have been discovered. Now, at the summary judgment stage, Defendant has offered unrebutted evidence which establishes Plaintiff's claim accrued no later than February 2020.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine dispute that Plaintiff's claim accrued as of February 2020 and no jury could reasonably conclude the claim was timely at the date of filing of her complaint.

## III. Plaintiff is Not Entitled to Tolling

California Commercial Code § 2725(4) states that "This section does not alter the law on tolling of the statute of limitations…….". Plaintiff states in her Complaint that any applicable statute of limitations has been tolled by equitable tolling, the discovery rule, fraudulent concealment, equitable estoppel, and the repair rule. ECF No. 1-2, ¶ 37. Plaintiff bears the burden to prove any exception to a statute of limitations defense. *Wolf*, 167 F. Supp. 3d, at 1092. The Court will address each in turn.

### A. Plaintiff Cannot Invoke Equitable Tolling

To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts. *Jamil v. Mercedes-Benz USA, LLC*, 780 F. Supp. 3d 957, 966 (C.D. Cal. 2025). "The doctrine 'focuses primarily on the plaintiff's excusable ignorance of the limitations period. It is not available to avoid the consequences of one's negligence.'" *Sagehorn v. Engle*, 141 Cal. App. 4th 452, 460 (2006).

Plaintiff's testimony shows that she was on notice of the claims as of February 2020 at the latest. As a result, she was required to exercise diligence in pursuing the claim. Plaintiff has failed to present any evidence showing that she exercised diligence to pursue her claims. Plaintiff has not provided any information regarding her actions after returning the vehicle in February 2020, to bringing this claim in January 2025.

As such, the Court finds that plaintiff has not met the requirements for equitable tolling because she did not present any proof regarding her diligence in bringing her claim.

B. <u>The Discovery Rule Does Not Apply to Toll the Statute of Limitations</u>

The "discovery rule" can "[postpone] the accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797, 807 (2005). Plaintiff has a "reason to discover" the cause of action as soon as he "has a suspicion of wrongdoing." *Jolly,* 44 Cal.3d at 1112, 245. As discussed above, Plaintiff had reason to discover the claim as of February 2020 as they were aware that the vehicle had issues and would not be repaired. Additionally, Plaintiffs seeking to benefit from the delayed discovery rule must show that they diligently pursued their claims, and that they could not have discovered their claims earlier, even if they exercised diligence. *Yi*, 2018 WL 3359016, at 6.

As in the Court's equitable tolling analysis, the Court finds that plaintiff has not met the requirements for the discovery rule because she did not present any evidence

regarding her diligence in bringing her claim. As a result, the discovery rule cannot apply to toll the statute of limitations.

C. Plaintiff has Failed to Invoke Equitable Estoppel

Equitable estoppel "focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit." *Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1051 (9th Cir. 2008). For equitable estoppel to apply, a plaintiff must show, among other things, that the plaintiff was "ignorant of the true state of facts." *Smothers v. BMW of N. Am., LLC*, 813 F. App'x 291, 294 (9th Cir. 2020). Plaintiff has not presented any evidence and failed to raise a triable issue as to whether FCA induced her to delay in filing suit, as necessary for estoppel. Therefore, Defendant was not equitably estopped from asserting a statute of limitation defense.

D. Plaintiff Cannot Invoke Fraudulent Concealment to Protect her Claims

"The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). "This doctrine requires the plaintiff to (1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate that he or she used due diligence in an attempt to uncover the facts." *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) (citing *Hunter v. Gates*, 68 F. App'x 69, 71 (9th Cir. 2003)). The Court finds that plaintiff is unable to invoke the

fraudulent concealment tolling as she presented no evidence regarding her exercise of diligence in pursuing her claims.

E. <u>Plaintiff is Unable to Show that the Repair Rule is Sufficient to Toll Her Claims</u>

Plaintiff has not provided any authority for her claim that the "repair rule" tolls the statute of limitations. The "repair rule" is found in Civ. Code § 1795.6.(a)(1) which states that:

> Except as provided in paragraph (2) warranty period relating to an implied or express warranty accompanying a sale or consignment for sale of consumer goods selling for fifty dollars ($50) or more shall automatically be tolled for the period from the date upon which the buyer either (1) delivers nonconforming goods to the manufacturer or seller for warranty repairs or service or (2), pursuant to subdivision (c) of Section 1793.2 or Section 1793.22, notifies the manufacturer or seller of the nonconformity of the goods up to, and including, the date upon which (1) the repaired or serviced goods are delivered to the buyer, (2) the buyer is notified the goods are repaired or serviced and are available for the buyer's possession or (3) the buyer is notified that repairs or service is completed, if repairs or service is made at the buyer's residence.

In sum, the warranty period is tolled or extended under only three circumstances: (1) the car is in the shop for warranty repairs (§ 1795.6, subd. (a)(1)), (2) there are delays in warranty repairs beyond the control of the buyer, and (3) upon notice from the buyer, given within 60 days of completion of warranty repairs, that those repairs did not solve the problem (§ 1795.6, subd. (b)). The statute provides no other circumstances under which the warranty is tolled or extended. *Ruiz Nunez v. FCA US LLC*, 61 Cal. App. 5th 385, 393 (2021).

As discussed above, Plaintiff's claim accrued as of February 2020. Therefore, she had until February 2024 to bring her claim. Plaintiff filed her complaint on January 30, 2025. As a result, Plaintiff is required to show that the repair doctrine provides for tolling of 11 months. Plaintiff has not presented any formulation or calculation of dates sufficient to bridge her untimely claim. While Plaintiff argues that Defendant's calculation of repair days is understated, her calculation is plainly insufficient. Specifically, Plaintiff points to the following periods: October 3-11, 2017, with a seven-day rental, October 17-22, 2018, and March 7-14, 2019. ECF No. 36 at 16. These dates total up to 29 days. Even crediting Plaintiff with the full tolling period provided by California Emergency Rule 9 and the one-month Plaintiff attempted to obtain an appointment, the limitations period would have expired prior to the date of filing. Therefore, considering the evidence in the light most favorable to plaintiff, there is no genuine dispute of fact that the repair doctrine is insufficient to toll the untimely claims.

## IV. Trial Burden

Plaintiff claims that providing evidence supporting the timeliness of her claims is a trial burden and therefore not required at Summary Judgment. While "resolution of the statute of limitations issue is normally a question of fact," summary judgment is appropriate "where the uncontradicted facts established through discovery are susceptible of only one legitimate inference." *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 656 F. Supp. 3d 1073, 1088 (C.D. Cal. 2023) *citing Jolly*, 44 Cal.3d

at 1112, 245; *see Gen. Bedding Corp.*, 947 F.2d at 1398 ("Ordinarily we leave the question of whether a plaintiff knew or should have become aware of a fraud to the jury.... Where there are disputed questions of fact or facts susceptible to opposing inferences as to when the statute of limitations for fraud commenced, summary judgment is not appropriate.") (internal quotation marks and citations omitted). The Ninth Circuit has upheld summary judgment on Song-Beverly claims when there was no triable issue as to whether those claims were timely under the applicable four-year limitations period. *Kwon Yi*, 805 F. App'x 459, at 461. As in *Kwon Yi*, there is no triable issue as to whether the claims were timely which permits the court to enter Summary Judgment.

As we conclude that Plaintiff's claims were untimely, we need not, and do not address damages or whether triable issues exist regarding Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- The Court **GRANTS** FCA's motion for summary judgment as to Plaintiff's express warranty Song-Beverly claims--counts one through three.
- The Court **GRANTS** FCA's requests for judicial notice of Exhibits 1-8.
- As none of Plaintiff's claims against Defendant survive summary judgment, the Clerk of Court is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

Dated: October 7, 2026

Hon. Gonzalo P. Curiel
United States District Judge